J-S05038-26

## NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KIRWIN HAYNES | : | |
| | : | |
| Appellant | : | No. 2653 EDA 2024 |

Appeal from the Judgment of Sentence Entered September 3, 2024
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0003824-2022

BEFORE: PANELLA, P.J.E., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED APRIL 10, 2026**

Kirwin Haynes appeals from the judgment of sentence imposed following a non-jury trial in which the court found him guilty of rape of a child and involuntary deviate sexual intercourse ("IDSI") with a child.[1] The court sentenced him to two concurrent terms of ten to twenty years of incarceration, to be followed by ten years of probation. Haynes' counsel, William Wismer, Esquire, has filed an application to withdraw and a brief pursuant to **_Anders v. California_**, 386 U.S. 738 (1967), and **_Commonwealth v. Santiago_**, 978 A.2d 349, 361 (Pa. 2009), which collectively state that the appeal is wholly frivolous. After review, we grant counsel's petition to withdraw and affirm.

As summarized by the trial court:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3121(c) and 3123(b), respectively.

[At a pre-trial hearing held o]n September 8, 2023, Curline Marryshow testified she is the mother of Z.V. Marryshow testified she, Z.V., one other daughter, and Haynes had lived together in Philadelphia. She testified Haynes was her boyfriend at the time.

At the Philadelphia house, Z.V. was [six to seven] years old. Z.V. told Marryshow that Haynes took Z.V. down to the basement and put his mouth "down there[."] Marryshow believed "down there" meant Z.V.'s vagina. When Z.V. told her, Marryshow was the only person present. Z.V. told Marryshow without being questioned.

After Z.V. told Marryshow, they had a conversation with Marryshow's two other daughters. During the conversation, Z.V. said it never happened. There were no other conversations in the Philadelphia home about Z.V. and Haynes.

In 2019, Marryshow and Z.V. moved to Upper Darby, Delaware County, Pennsylvania. In 2022, Z.V. again told Marryshow that Haynes was putting his mouth "down there." Z.V. told Marryshow without being questioned.

When Z.V. told Marryshow, she was in the kitchen cooking. Marryshow and Z.V. started crying. Marryshow took Z.V. from the house and for a drive. During the drive, Marryshow testified that Z.V. told her details about what Haynes was doing "down there" in her vagina. Marryshow told Z.V. to tell her the truth. Z.V. kept answering, "Yes, mom, yes mom, I'm telling the truth." Marryshow started to cry and said, "You know [Haynes] will go to jail if he did something like that. You have to tell me the truth." Marryshow told Z.V., "you can't say something like [that] about somebody if you know they're not doing that to you." Marryshow testified Z.V. then told her, "It never happened."

Marryshow testified she received a phone call from Z.V.'s teacher the next day or the day after her conversation with Z.V. Marryshow testified Z.V.'s teacher said Z.V. told the teacher that Z.V.'s stepdad "put his mouth down there."

Marryshow testified Z.V.'s teacher said she and Marryshow had to report what Z.V. told them. Marryshow testified she spoke with Z.V.[,] and Z.V. told Marryshow that Z.V. spoke with her teacher, and it is true that Haynes "puts his mouth down there" when Marryshow is not home. Marryshow testified Z.V. said Haynes would tell Z.V. to take a shower and take her underwear off.

Marryshow testified Z.V. said Haynes "went down there with his mouth."

Marryshow testified [that] after her conversation with Z.V., they went to speak with Haynes. Marryshow testified Haynes showed Marryshow his phone[] and said Z.V. was accessing pornography. Marryshow testified Z.V. screamed, "Yeah, mom, I did it, I did it."

Marryshow testified she had another conversation with Z.V. after their conversation with Haynes. Marryshow testified Z.V. said Haynes would come to her room at night, knock on her door, and let Z.V. know she could come to his room or downstairs because Marryshow was at work or asleep. On cross-examination, Marryshow testified that when Z.V. was six or seven, Z.V. told Marryshow [that] Haynes put his mouth on Z.V.'s vagina. Marryshow testified Z.V. then told her it was not true. Marryshow testified she did not report Z.V.'s statement to the police department, [Children and Youth Services,] or [the Department of Human services]. Marryshow testified Z.V. made these statements one day when they lived in Philadelphia. Marryshow testified Z.V. made her second statement in 2022. Marryshow testified Z.V. made statements in Philadelphia[ and] then [in] Upper Darby before her teacher called Marryshow[] and then after her teacher called. Marryshow testified she spoke with Z.V.'s teacher, then she spoke with Z.V., then she spoke with Z.V. and Haynes, and[,] after Haynes left the home, she spoke with Z.V. again. Marryshow testified Z.V. was crying and screaming, "It's me, mom, it's me, it's me." Marryshow testified [that] Z.V. told Marryshow about what happened on the couch downstairs and one of the bedrooms at the house located on Blanchard Road[ in Delaware County].

[At another hearing held on June 29, 2023, Oseman] Omo-Osagie testified she worked [at the] Upper Darby School District as a middle school teacher at Drexel Hill Middle School. In March of 2022, she worked as a special education teacher. Z.V. was her student. Omo-Osagie would see Z.V. part of the day, every day.

During a break in a small group class instruction, Z.V. asked Omo-Osagie if she could tell her something. Omo-Osagie said yes. Omo-Osagie spoke with Z.V. in the classroom.

Omo-Osagie and Z.V. sat in chairs close to each other. Omo-Osagie asked, "So, what's up?" Z.V. said, "I just want to tell you

something that's a little . . . it's about my . . . dad." Omo-Osagie asked, "What about your dad?" Z.V. said, "My dad does stuff to me."

Omo-Osagie asked, "What things are we talking about?" Z.V. looked down[] and said, "Like adult stuff." Omo-Osagie didn't ask any further questions. Omo-Osagie told Z.V., "Go back to your seat, don't worry, I'll take care of it."

On cross-examination, Omo-Osagie testified she was Z.V.'s special education teacher for the entire school year. Omo-Osagie testified that she had not met Z.V. before the school year. Omo-Osagie confirmed Z.V. said, "my dad." Omo-Osagie testified she had not met Haynes. Omo-Osagie testified she may have met Z.V.'s mother in virtual meetings for Z.V.'s individual educational plan.

Omo-Osagie explained she was Z.V.'s special education teacher and case manager. Omo-Osagie testified she only had one conversation with Z.V. about her dad doing things to her.

. . .

Omo-Osagie testified Z.V. didn't say anything specific. Omo-Osagie testified Z.V. did not tell her there was contact with abuse. Omo-Osagie testified she did not see any bruises on Z.V. Omo-Osagie testified Z.V. did not mention bruising.

Trial Court Opinion, 6/11/25, at 2-8 (record citations and unnecessary words omitted; formatting altered).

As a particular point of contention leading up to and at trial,

the Commonwealth [filed a motion and] argued for the admission of Z.V.'s statements to her teacher, mother[,] and forensic interviewer pursuant to the Tender Years [Act], 42 Pa.C.S. § 5985.1. The Commonwealth asserted Z.V. would testify as a witness at trial. Haynes' attorney requested the court's [o]rder be conditioned upon the availability of Z.V., and if Z.V. is not available at the trial, for the court to reconsider its decision. Haynes' attorney requested Z.V.'s statements to her teacher and Marryshow be excluded because Z.V. identified her dad, not her step-father[,] Haynes. Haynes' attorney also requested Z.V.'s

statement to her teacher and Marryshow be excluded because Marryshow testified [that] Z.V. lies. Haynes' attorney did not argue against the admissibility of the forensic interview.

*Id.* at 8-9 (record citations omitted; unnecessary words omitted). Ultimately, on January 9, 2024, the court granted the Commonwealth motion, allowing for the admission of the statements Z.V. made to Marryshow, Omo-Osagie, and the forensic interviewer.

At trial, which commenced on May 30, 2024, the Commonwealth presented testimony from both Z.V. and Marryshow, the latter of whom testified consistent with her earlier testimony at the prior hearing. As to Z.V.'s testimony, *inter alia*, she indicated that Haynes' tongue touched her "private part." N.T. Trial, 5/30/24, at 23. Haynes also touched Z.V.'s "boobs and [] vagina" and "mouth" with "[h]is private part" and "his hands[.]" *Id.* at 22.

On June 3, 2024, the court found Haynes guilty of the two above-mentioned offenses. Sentencing occurred on September 3, 2024, resulting in the imposition of two concurrent terms of ten to twenty years of incarceration, to be followed by ten years of probation, and Haynes timely appealed thereafter. Subsequently, the court granted trial counsel's petition to withdraw, appointed new counsel, and extended the time by which new counsel could file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). New counsel timely complied with the court's extension-of-time order, filing a statement raising five issues, but has, before this Court, filed both an application to withdraw as counsel and an *Anders* brief.

In counsel's **Anders** brief, congruent with the as-filed statement of errors complained of on appeal, Attorney Wismer identifies that Haynes is arguing that: (1) the court erred by admitting, pursuant to the Tender Years Act, Marryshow and Omo-Osagie's statements as well as the content of the forensic interview[2]; and (2) there was insufficient evidence to convict Haynes of rape of a child and IDSI with a child. **See Anders** Brief at 3-4.

Prior to reaching the merits of this appeal, we must determine whether counsel has satisfied the procedural requirements of **Anders** and its progeny. **See Commonwealth v. Yorgey**, 188 A.3d 1190, 1195 (Pa. Super. 2018) (*en banc)* (citation omitted). In particular,

> [c]ounsel must [ ] provide the appellant with a copy of the **Anders** brief, together with a letter that advises the appellant of his or her right to[:] (1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of th[is C]ourt's attention in addition to the points raised by counsel in the **Anders** brief.

**Commonwealth v. Reid**, 117 A.3d 777, 781 (Pa. Super. 2015) (citation and

---

[2] We note that the Commonwealth maintains that "[a]ny argument regarding the statements made during the forensic interview [would be] waived as [Haynes'] counsel [] conceded their admission below." Appellee's Brief at 14. The trial court indicated the same: "[d]espite arguing for the exclusion of the substance and basis of the forensic interview, Haynes' attorney did not argue against the admissibility of the forensic interview." Trial Court Opinion, 6/11/25, at 15 (record citation omitted; unnecessary words omitted). Our review of the record yields a similar conclusion regarding issue preservation, so we limit our subsequent discussion exclusively to Z.V.'s statements made to Marryshow and Omo-Osagie. **See** Pa.R.A.P. 302(a) (requiring issues to be raised in the trial court or they are otherwise waived if raised for the first time on appeal).

quotation marks omitted).

> The substance of the **Anders** brief must[:] (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Commonwealth v. Dempster**, 187 A.3d 266, 270 (Pa. Super. 2018) (*en banc*) (citations and quotations marks omitted). "Substantial compliance with [the **Anders**] requirements is sufficient." **Reid**, 117 A.3d at 781 (citation omitted). After determining that counsel has satisfied these requirements, this Court must then "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **Commonwealth v. Schmidt**, 165 A.3d 1002, 1006 (Pa. Super. 2017). (citation omitted).

Here, Attorney Wismer fully complied with the requirements set forth above. Counsel filed a petition to withdraw in this Court, wherein he averred that he has "conducted a thorough and conscientious examination of the entire record of the within matter, along with applicable statutory and caselaw [authority], and has determined that there are no issues of arguable merit to be raised in the within appeal and that the appeal is wholly frivolous[.]" Application for Leave to Withdraw as Counsel, 10/6/25, at ¶ 3. Attorney Wismer's letter to Haynes is attached as an exhibit to the application to

withdraw, and it further states that counsel appended a copy of both the application and of the **Anders** brief to the letter. **See id.** at Exhibit A. Furthermore, the letter to Haynes informs him of his right to proceed *pro se* to raise any issues or information he deems worthy of this Court's review and also informs Haynes of his right to hire new counsel to do the same. **See id.**

Having concluded that Attorney Wismer fully complied with the **Anders** requirements, we independently review the record to determine if Haynes' issues are, in fact, frivolous and to ascertain if there are any other, non-frivolous issues that he could pursue. **See Schmidt**, 165 A.3d at 1006.

As indicated above, Haynes purports to raise two overarching issues on appeal, albeit through the lens of frivolity as discussed by Attorney Wismer: (1) the court's abuse of discretion in admitting certain evidence via the Tender Years Act exception to the hearsay rule; and (2) the sufficiency of evidence underpinning his convictions.

Starting with the first issue, we note that the admission of evidence is within a trial court's sound discretion and will only be reversed where the court clearly abuses that discretion. **See Commonwealth v. Wilson**, 273 A.3d 13, 19 (Pa. Super. 2022). An abuse of discretion occurs only where the judgment is "manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias[,] or ill-will." **Id**. (internal citation omitted). It is not enough to persuade an appellate court that, if given the opportunity, it would have reached a different result;

an appellant must show the trial court abused its discretionary power. *See Commonwealth v. Norton*, 201 A.3d 112, 120 (Pa. 2019).

Section 5985.1 of the Judicial Code, known as the "Tender Years" exception to the hearsay rule, provides as follows:

**Admissibility of certain statements**

(a) **General rule**.--

(1) An out-of-court statement made by a child victim or witness, who at the time the statement was made was 16 years of age or younger, describing any of the offenses enumerated in paragraph (2) [including, *inter alia*, various statutes relating to sexual abuse and sexual abuse of children], not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

(i) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(ii) the child either:

(A) testifies at the proceeding; or

(B) is unavailable as a witness.

42 Pa.C.S. § 5985.1(a)(1). A court assesses relevance and reliability through consideration of such factors as: the spontaneity of the statements, consistency in repetition, the declarant's mental state, use of terms unexpected in children of that age, and the lack of a motive to fabricate. *See Commonwealth v. Walter*, 93 A.3d 442, 451 (Pa. 2014).

After our review we conclude that the court did not abuse its discretion

- 9 -

in admitting Z.V.'s statements to either Marryshow or Omo-Osagie. As to

Marryshow, the court found that

> Z.V.'s statements possessed particularized guarantees of trustworthiness because the statements were spontaneous. Furthermore, [the] court infer[red reliability] from the totality of the circumstances surrounding the two times Z.V. disclosed to Marryshow, Z.V.'s demeanor was that of fear and shame.
>
> [The court also found that] Z.V. used terms unexpected [of] a child of her age in her statements to Marryshow.
>
> In Z.V.'s first statement (in the Philadelphia home), she told Marryshow that Haynes took Z.V. down to the basement and put his mouth down there (a reference to Z.V.'s vagina).
>
> In Z.V.'s second statement (in the Upper Darby home), Z.V. said Haynes would tell Z.V. to take a shower and take her underwear off.
>
> Z.V. said Haynes "went down there with his mouth."
>
> When comparing the two statements made by Z.V. to Marryshow, [the] court [found] the two statements to be consistent in repetition.

Trial Court Opinion, 6/11/25, at 12-13 (record citation omitted; unnecessary

words omitted).

Regarding Omo-Osagie's testimony, the court determined that although

Z.V.'s statement was not necessarily spontaneous, it was made to Omo-

Osagie, as Z.V.'s teacher, without prompting. ***See id***. at 13-14.

> Furthermore, as explained by Omo-Osagie, Z.V.'s demeanor was shy, and therefore, [the] court infer[red] Z.V. was scared to make her statement to Omo-Osagie.
>
> Omo-Osagie had to reassure Z.V. by saying, "Okay, don't worry, we'll take care of it."

[The] court reason[ed] that the declarant Z.V.'s mental state when she made her statement to Omo-Osagie lacked a motive to fabricate.

Finally, [the] court determine[d that the content of Z.V.'s language to Omo-Osagie provided] evidence of the use of terms unexpected in a child of Z.V.'s age[, e.g., Z.V.'s reference to Haynes performing "adult stuff" on her.]

Trial Court Opinion, 6/11/25, at 14 (record citation omitted; unnecessary words omitted).

In making its decisions as to the admissibility of Z.V.'s statements to Marryshow and Omo-Osagie, the court clearly considered the factors, as outlined in **Walter**, and we see no basis to conclude that it abused its discretion in either decision. Of particular note, the spontaneousness, consistency of repetition, and use of unexpected language in Z.V.'s statements as to Marryshow and Z.V.'s mental state–evidencing fear and shame–and use of unexpected language in her statements to Omo-Osagie provided the court with sufficient indicia of reliability in admitting this evidence. Therefore, the record supports Attorney Wismer's assessment that any challenge premised on the court's abuse of discretion in the tender-years-exception domain is frivolous. Accordingly, no relief is due on Haynes' challenges to admissibility of evidence.

As to the sufficiency of the evidence underpinning his convictions, his contention is premised on those aforementioned statements being inadmissible. Nevertheless, the **Anders** brief argues that such statements were not even necessary to adjudicate Haynes' guilt at either crime because

"Z.V.'s trial testimony and her forensic interview[] establish the elements of" both rape of a child and IDSI. *Anders* Brief at 21.

For sufficiency claims, we employ a well-settled standard of review:

the standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Kim*, 888 A.2d 847, 851-52 (Pa. Super. 2005) (citation and brackets omitted).

An individual is guilty of rape of a child when he or she "engages in sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S. § 3121(c). Likewise, an individual is guilty of IDSI with a child "when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S. § 3123(b).

Sexual intercourse, in addition to its ordinary meaning, "includes intercourse per os or per anus, with some penetration however slight;

- 12 -

emission is not required." 18 Pa.C.S. § 3101. Meanwhile, deviate sexual intercourse is defined as:

> Sexual intercourse per os or per anus between human beings and any form of sexual intercourse with an animal. The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic[,] or law enforcement procedures.

*Id.*

Both rape of a child and IDSI with a child "prohibit intercourse per os or per anus with a child less than 13 years of age. [Accordingly, this Court has] conclude[d] that the statutory elements of rape of a child and IDSI with a child, where the underlying act is oral sex, are the same." ***Commonwealth v. Brown***, 159 A.3d 531, 534 (Pa. Super. 2017). The acts of kissing, licking, and sucking a vagina have been deemed sufficient evidence of penetration, as an element of IDSI with a child. ***See Commonwealth v. Ziegler***, 550 A.2d 567, 570 (Pa. Super. 1988); ***see also Commonwealth v. Trimble***, 615 A.2d 48, 50 (Pa. Super. 1992) ("[O]ral contact with the female genitalia is sufficient to support the penetration requirement for IDSI.").

At trial, Z.V., who was then thirteen, indicated that she was six years old when Haynes started to make sexual contact with her. ***See*** N.T. Trial, 5/30/24, at 21. In particular, *inter alia*, Z.V. testified that Haynes' tongue specifically touched her "private part." ***Id.*** at 23.[3] Therefore, through solely

---

[3] Z.V. later clarified that "private parts" meant her "vagina." N.T. Trial,
*(Footnote Continued Next Page)*

her testimony, alone, the elements of age, sexual intercourse, and penetration at both offenses have been met. ***Cf. Commonwealth v. Johnson***, 180 A.3d 474, 479 (Pa. Super. 2018) (affirming the proposition that a single witness's testimony – if accepted by the fact-finder – may establish every element of a crime). Thus, when examining the evidence in the light most favorable to the Commonwealth as verdict winner, there was sufficient evidence for the fact-finder to conclude, beyond a reasonable doubt, that Haynes was guilty of both rape of a child and IDSI with a child.

Finally, our independent review of the entire record reveals no additional non-frivolous claims. Accordingly, we grant Attorney Wismer's application to withdraw and affirm Haynes' judgment of sentence.

Application to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/10/2026

_____

5/30/24, at 25.

- 14 -